269 S.E.2d 391 (1980)
F. Lee COGDILL
v.
FIRST DISTRICT COMMITTEE OF the VIRGINIA STATE BAR.
Record No. 781832.
Supreme Court of Virginia.
August 28, 1980.
Henry Paul Bouffard (Stanley E. Sacks, William L. Perkins, III, Sacks, Sacks & Perkins, Norfolk, on brief), for appellant.
William H. Hurd, Asst. Atty. Gen. (Marshall Coleman, Atty. Gen., Walter H. Ryland, Chief Deputy Atty. Gen., on brief), for appellee.
Before I'ANSON, C. J., and CARRICO, HARRISON, COCHRAN, POFF, COMPTON and THOMPSON, JJ.
THOMPSON, Justice.
This is an appeal of right pursuant to Code § 54-74(5) from a judgment entered September 25, 1978, finding F. Lee Cogdill (Cogdill) guilty of unprofessional conduct and revoking his license to practice law.
Since this appeal involves two unrelated matters, we shall designate them as: I. The Ulisse Matter, and II. The Burns Matter.

I. THE ULISSE MATTER
Two checks payable to Charles Ulisse & Sons, Inc., and drawn on Cogdill's trust account, form grounds for the complaint that Cogdill failed to preserve the identify of funds belonging to clients, thereby *392 violating DR 9-102 and DR 1-102(A).[1] The evidence is undisputed that both checks represented loans to the Ulisse Company  not payments owed to that company because of any credit it may have had in the trust account.
The first check to the Ulisse Company was drawn in the amount of $7,500, dated July 27, 1972, and was signed by one of Cogdill's secretaries at the time. It is undisputed that the check was, in fact, drawn upon Cogdill's trust account and that it was paid and processed by the bank without any complaint.
In explaining the circumstances surrounding this check, Anthony Ulisse testified that Cogdill gave it to him as a loan after he had asked Cogdill for some money to help pay taxes. On more than one occasion, Cogdill pressed Ulisse for repayment of the loan. One of these demands for repayment consisted of a letter to Anthony Ulisse, dated June 6, 1973, in which Cogdill wrote, "On July 27, 1972, I loaned you the sum of $7,500 as an outright loan to you." Cogdill went on to note that Ulisse had made no effort to pay back any of this money and declared that, "On June 10, 1973, I will expect payment of this sum made personally to me as payment in full of this loan."
Cogdill also sent the Ulisse Company a Statement of Account dated August 29, 1975, which listed the transactions that had taken place between Cogdill and the company. This statement contains an entry which clearly shows that a loan of $7,500 was made to the Ulisse Company on July 27, 1972. Anthony Ulisse testified further that the loan was eventually repaid by a certified check given to Cogdill.
The second check was drawn in the amount of $4,000, dated April 4, 1975, and signed by an attorney employed by Cogdill at the time. It is undisputed that this second check was drawn on Cogdill's trust account, and that it was repaid and processed through the bank without complaint.
In explaining the circumstances surrounding this $4,000 check, Anthony Ulisse testified that it was a loan given to his company by Cogdill in order that the company could pay some debts it owed. Ulisse testified explicitly that he discussed the matter with Cogdill and that the money was owed to Cogdill. His testimony also shows that the loan was considered an advance to the company, and that plans for repayment were based upon the fact that Cogdill was handling some cases for the company in which money for settlement had not yet been received.
There was also written evidence to corroborate the testimony of Ulisse. The check itself was inscribed with the notation, "Loan to be repaid." Furthermore, the Statement of Account from Cogdill to the Ulisse Company includes the entry: "Loan by check on April 4, 1975," and lists the amount at $4,000. The testimony also shows that the loan was repaid out of the *393 proceeds of a subsequent suit in which Cogdill represented the Ulisse Company.
The evidence of the First District Committee made out a prima facie case of an infraction of DR 9-102. If Cogdill came within one of the exceptions to the rule, then the burden of producing evidence to that effect was upon him. He did not sustain this burden.
If Cogdill made loans from the trust account he obviously treated the money as his own, and the correspondence confirms this conclusion. Under DR 9-102, he was not permitted to have his own funds in the trust account. We hold that the action of the lower court in this regard was clearly right, and that action is affirmed.

II. THE BURNS MATTER.
This matter, involving the same female witness, was the subject of an earlier appeal. In Cogdill v. Commonwealth, 219 Va. 272, 247 S.E.2d 392 (1978), we affirmed Cogdill's conviction under Code § 18.2-348 of procuring Mary Katherine Burns for the purpose of prostitution.
By appropriate assignments of error, Cogdill challenges the admissibility into evidence of tape recordings of conversations he had with Burns, the failure of the trial court to sustain his defense of entrapment, and the sufficiency of the evidence to support a violation of DR 1-102(A)(3), (6), and DR 7-102(A)(7).[2]
Since the challenges concerning the recorded conversations and the defense of entrapment were the identical points raised and decided adversely to Cogdill in his earlier criminal appeal, it would constitute "benumbing repetition" to restate here the arguments of the parties and the reasoning of the court. It suffices to say that, for the same reasons, we dismiss the challenges here.
As to Cogdill's contention that the evidence was insufficient to show the alleged violations with reference to the Burns matter, we believe that the evidence was overwhelming of an intended violation of Code § 18.2-348, and we reject this argument out of hand. In this connection, EC 7-5 is pertinent:
A lawyer as adviser furthers the interest of his client by giving his professional opinion as to what he believes would likely be the ultimate decision of the courts on the matter at hand and by informing his client of the practical effect of such decision. He may continue in the representation of his client even though his client has elected to pursue a course of conduct contrary to the advice of the lawyer so long as he does not thereby knowingly assist the client to engage in illegal conduct or to take a frivolous legal position. A lawyer should never encourage or aid his client to commit criminal acts or counsel his client on how to violate the law and avoid punishment therefor. (Emphasis added.)
The judgment of the trial court is affirmed.
Affirmed.
NOTES
[1] Virginia Code of Professional Responsibility, included in Part Six of the Rules of the Supreme Court, provides in pertinent part:

DR 9-102 Preserving Identity of Funds and Property of a Client.
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows: (Emphasis added.)
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
[2] Virginia Code of Professional Responsibility, supra note 1, at 1, stated in pertinent part:

DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
. . . . .
(3) Engage in illegal conduct involving moral turpitude.
. . . . .
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
DR 7-102 Representing a Client Within the Bounds of the Law.
(A) In his representation of a client, a lawyer shall not:
. . . . .
(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.