IN THE MATTER OF STEVEN L. KATZ, AN ATTORNEY AT LAW.

Argued September 15, 1987—Decided October 30, 1987.

*David E. Johnson, Jr.*, Director, argued the cause on behalf of Office of Attorney Ethics.

*Dennis J. Oury* argued the cause for respondent.

PER CURIAM.

This disciplinary proceeding arose from a motion filed by the Office of Attorney Ethics (OAE) before the Disciplinary Review Board (DRB), seeking final discipline of respondent, Steven L. Katz, pursuant to Rule 1:20–6(b)(2)(i). The motion was based on respondent's plea of guilty to the misdemeanor of promoting prostitution in the fourth degree under § 230.20 of the New York Penal Law. The DRB found that respondent has engaged in illegal conduct that adversely reflects on his fitness to practice law and has recommended that he be suspended from the practice of law for two years. Our independent review of the record leads us to accept that recommendation.

## I

The relevant facts are set forth in the Decision and Recommendation of the DRB.

Following his admission to the bar in 1971, respondent became involved in the family construction business. He has never practiced law.

In the 1970's respondent became a co-owner of a burlesque theatre on West 48th Street in the Times Square area of New York City. At first the theatre operated as a "striptease joint." Admission fees were charged. Beginning approximately in January 1981, a practice known as "Mardi Gras" was introduced. During that event, the female "performers" would mingle with the audience. The male patrons in the audience would be permitted to touch and fondle the performers. Additionally, oral/genital and digital/genital contact between the patrons and performers occurred, for which the performer received payment. Respondent and his partners did not share in these "tips" but they profited from the increased number of patrons, each of whom paid an admission fee.

On November 30, 1982, respondent and one of his partners, a member of the bar of the State of New York, were indicted for promoting and profiting from prostitution in the third degree, in violation of section 230.25 of the New York Penal Law. On February 14, 1983, both respondent and his partner completely divorced themselves from involvement in the enterprise.

At the conclusion of a jury trial in early 1984, the jury was hopelessly deadlocked. On May 14, 1984, respondent pleaded guilty to the fourth degree misdemeanor of promoting prostitution, in violation of section 230.20 of the New York Penal Law. On August 1, 1984, the court sentenced respondent to a conditional discharge with a $1,000 fine.

## II

A criminal conviction of an attorney is conclusive evidence of guilt in a disciplinary proceeding. *R.* 1:20–6(b)(1). The extent of final discipline to be imposed is thus the sole issue to be determined in this proceeding. *R.* 1:20–6(b)(2)(ii); *Matter of Goldberg,* 105 *N.J.* 278, 280 (1987); *Matter of Litwin,* 104 *N.J.* 362, 364–65 (1986); *Matter of Tuso,* 104 *N.J.* 59, 62 (1986); *Matter of Alosio,* 99 *N.J.* 84, 88 (1985); *In re Addonizio,* 95 *N.J.* 121, 123 (1984).

In determining the appropriate discipline, we consider many factors, among them the nature and severity of the crime, whether the crime is related to the practice of law, the respondent's good reputation, prior trustworthy professional conduct,

and general good character. *Matter of Goldberg, supra,* 105 *N.J.* at 280; *Matter of Litwin, supra,* 104 *N.J.* at 365; *Matter of Tuso, supra,* 104 *N.J.* at 62; *In re Mischlich,* 60 *N.J.* 590, 593 (1972).

■ Based on our independent review of the record applying the above criteria to this case, we agree with the DRB that respondent's conviction establishes that he has engaged in illegal conduct that adversely reflects on his fitness to practice law, in violation of *DR* 1–102(A)(3).[1]

Both respondent and his co-defendant, Frederick P. Cincotti, pleaded guilty to the promotion of prostitution in the fourth degree, a misdemeanor, in violation of § 230.20 of the New York Penal Law,[2] which provides in pertinent part,

> [a] person is guilty of promoting prostitution in the fourth degree when he knowingly advances or profits from prostitution. [N.Y.Penal Law § 230.20 (McKinney 1980).]

We have found few cases involving disciplinary actions against attorneys involved in promoting prostitution. In New Jersey, the only reported disciplinary matter involving an attorney promoting prostitution is this Court's acceptance of an attorney's resignation from the bar with prejudice based in part on his conviction of promoting prostitution in Atlantic City. *In re Rosenstein,* 95 *N.J.* 626 (1984); *see also Matter of Wolff,* 490

---

[1]Effective September 10, 1984, the Rules of Professional Conduct of the American Bar Association, as modified by this Court, govern the conduct of the members of the bar of this State. *R.* 1:14. Respondent's actions occurred prior to this date, and are consequently governed by the Disciplinary Rules then in force.

[2]*N.J.S.A.* 2C:34–1(b)(7) is the comparable New Jersey provision to § 230.20 of the New York Penal Law. *N.J.S.A.* 2C:34–1(b)(7) defines the fourth degree crime of promoting prostitution:

> The following acts shall .... constitute promoting prostitution:
> (7) Leasing or otherwise permitting a place controlled by the actor, alone or in association with others, to be regularly used for prostitution or the promotion of prostitution, or failure to make reasonable effort to abate such use by ejecting the tenant, notifying law enforcement authorities, or other legally available means.... [*N.J.S.A.* 2C:34–1(b)(7).]

A.2d 1118 (D.C.App.1985), vacated, 494 A.2d 932 (D.C.App.1985) on rehearing *en banc*, 511 A.2d 1047 (D.C.App.1986) (attorney disbarred for engaging in the distribution of child pornography and engaging in acts of prostitution; the court noted that conduct centering around prostitution has been deemed activity involving moral turpitude in disbarment proceedings, citing *In re Kosher*, 61 *Wash.*2d 206, 377 *P.*2d 988 (1963)); *In re Kosher*, 61 *Wash.*2d 206, 377 *P.*2d 988, 990 (1963) (attorney disbarred based in part upon the fact that he had "aided and abetted the illicit practice of prostitution" by "(1) the establishment of houses of prostitution, (2) the securing of women essential to their operation, (3) the direction of some 'customers' to the brothels, and (4) the collection and apparent sharing in an overhead fee ..."); *In re Okin*, 272 *A.D.* 607, 608, 73 *N.Y.S.*2d 861, 862 (App.Div.1947) (attorney disbarred who was convicted for keeping and maintaining "a disorderly house" knowing that "the premises operated or managed by him were used for immoral purposes").

A case directly on point, of course, is *Matter of Cincotti*, 115 *A.D.*2d 24, 499 *N.Y.S.*2d 736 (App.Div. 1 Dept.1986), where respondent's co-defendant, Frederick P. Cincotti, who pleaded guilty to the same charge to which the respondent pleaded guilty in the present case, was suspended from the practice of law for two years. In its decision imposing discipline of Mr. Cincotti, the court stated the following language which is equally applicable to respondent:

[i]t is clear from an examination of the record in this matter that respondent simply fails to recognize that his misdeeds constitute more than a regrettable error in judgment. On the contrary, as a result of his personal involvement in day-to-day operations over several years, he certainly knew, or should have known, that he was not merely providing legitimate entertainment and that customers were being attracted to the theatre not by the artistic merits of the "performances" but rather by the sexual activities taking place there. Furthermore, while respondent may not have shared in the direct payments made to the "performers", he undoubtedly profited at the box office. Consequently, the nature of the misconduct at issue here is sufficiently serious to warrant the imposition of a suspension for a period of two years. [115 *A.D.*2d at 26, 499 *N.Y.S.*2d at 738.]

We have long recognized that the primary purpose of discipline is not to punish the attorney but to preserve the confidence of the public in the bar. We consider the interests of the public, the bar, and the attorney. We judge each case on its own facts. *Matter of Kushner,* 101 *N.J.* 397, 400 (1986); *In re Addonizio, supra,* 95 *N.J.* at 123; *In re Mischlich, supra,* 60 *N.J.* at 593.

The DRB in its Decision and Recommendation acknowledged the following mitigating factors:

Several members of the community and business associates attested to respondent's good character. Moreover, respondent twice opened his home to troubled teenagers. Furthermore, respondent has never practiced as an attorney or held himself out to be a practicing attorney. Unlike his partner, a practicing government attorney for the State of New York, there is no public trust that was betrayed. Finally, upon learning that the activities occurring at the theatre were in fact criminal, respondent claims he promptly disassociated himself from the operation.

Nevertheless, it concluded that the aggravating factors outweigh the mitigating. We agree. Respondent's conduct was not an isolated act or an aberration. He was actively engaged in the operation of The Melody Burlesque Theatre ("the Melody"), which he visited a few days every week. He knew the degenerate activities that were conducted at the Melody and he realized their illegality. Nevertheless, he continued to engage in the illegal operation hopeful that the law enforcement authorities' preoccupation with violent crimes would cause them to ignore the activities that occurred at the Melody. Respondent's motive, as that of the attorneys in *Matter of Goldberg, supra,* 105 *N.J.* at 283; *Matter of Tuso, supra,* 104 *N.J.* at 64; *Matter of Alosio, supra,* 99 *N.J.* at 89, solely was greed.

We recognize that respondent, unlike his co-defendant, did not practice law. Nevertheless, we have long held that all attorneys "are held to a higher standard than that of the market place." *Matter of Reiss,* 101 *N.J.* 475, 488 (1986). An attorney is "bound even in the absence of the attorney-client relation to a more rigid standard of conduct than required of laymen. To the public he is a lawyer whether he acts in a

representative capacity or otherwise." *In re Gavel,* 22 *N.J.* 248, 265 (1956).

The crime at issue here was not related to the practice of law. Respondent, as a member of the bar, and by his own admission, realized that morally reprehensible acts were occurring at the Melody and that such acts were illegal. Nevertheless, he continued to allow the acts and profit from them.

We find respondent's illegal conduct is serious. Considering all the relevant circumstances, we conclude that respondent should be suspended from the practice of law for two years. We direct that he reimburse the Ethics Financial Committee for administrative costs.

So ordered.

## ORDER

It is ORDERED that STEVEN L. KATZ of ROCKAWAY, who was admitted to the bar of this State in 1971, be suspended from the practice of law for a period of two years and until the further order of this Court; and it is further

ORDERED that STEVEN L. KATZ reimburse the Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that STEVEN L. KATZ be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that STEVEN L. KATZ comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended attorneys.

WITNESS, the Honorable Robert N. Wilentz, Chief Justice, at Trenton, this 30th day of October, 1987.

*For suspension*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.