**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Linda Jean LYZENGA a/k/a Linda Lyzenga Shields, Respondent.**

**No. 00–1102.**

Supreme Court of Iowa.

Nov. 16, 2000.

---

* Senior judge assigned by order pursuant to    Iowa Code section 602.9206 (1999).

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Linda Jean Lyzenga, Davenport, pro se.

LAVORATO, Chief Justice.

In this lawyer disciplinary proceeding, we review the Grievance Commission's recommendation that Linda Jean Lyzenga's license to practice law in Iowa be revoked for her multiple violations of DR 1–102(A)(3), (4), (5), and (6) stemming from her fourteen convictions for theft, prostitution, trespass, forgery, and deceptive practices. Upon our de novo review, we agree with the commission that Lyzenga's license should be revoked.

### I. Background Facts and Proceedings.

From May 1991 to April 1995, Lyzenga had been practicing at the State of Iowa Public Defender's Office. In April 1995, she moved to Davenport to handle her mother's estate. Unable to find work in Davenport, she discontinued practicing law.

On March 15, 2000, the Iowa Supreme Court Board of Professional Ethics and Conduct filed a complaint with the commission alleging that Lyzenga had violated Iowa Code of Professional Responsibility DR 1–102(A)(3) (lawyer shall not engage in illegal conduct involving moral turpitude), (4) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), (5) (lawyer shall not engage in conduct prejudicial to the administration of justice), (6) (lawyer shall not engage in any other conduct reflecting adversely on fitness to practice law).

The complaint was based on the following criminal convictions entered against Lyzenga from 1996 to 1999:

1. Three aggravated misdemeanor convictions for prostitution on February 25, 1997, and one such conviction on May 21, 1999.

2. Three aggravated misdemeanor convictions for theft on January 1, 1996, February 25, 1997, and May 21, 1999.

3. Four simple misdemeanor convictions for theft on March 18, 1996, June 25, 1996, September 26, 1996, and February 9, 1997.

4. One simple misdemeanor conviction for trespass on September 26, 1996.

5. One felony conviction for forgery on April 4, 1996.

6. One misdemeanor conviction for deceptive practices on April 4, 1996.

As to the deceptive practices conviction and three of the theft convictions, Lyzenga wrote bad checks. As to the felony forgery conviction, Lyzenga wrote a check on an account for which she was not a listed executor. As to the five other theft charges, Lyzenga shoplifted a sweater, food, and undisclosed merchandise. As to the trespass conviction, Lyzenga was on shopping mall property from which she had previously been banned.

Except for two, all of these convictions occurred in Iowa. The two exceptions—felony conviction for forgery on April 4, 1996, and misdemeanor conviction for deceptive practices on April 4, 1996—occurred in Illinois.

A request for admissions accompanied the complaint. The board requested Lyzenga to admit or deny the foregoing criminal convictions as well as its assertion that her license was already under suspension pursuant to Court Rules 121 and 123 for failure to comply with client security and continuing legal education requirements.

Lyzenga sent the board a letter on August 9, 1999, in response to a complaint the board had received. She acknowledged the convictions and the license suspension, but offered a variety of explanations for her conduct, mostly centering on the death of her parents, the collapse of her marriage, an abusive relationship, and her inability to find work both in and outside the legal profession.

The commission held a hearing on May 30, 2000. Although the record shows she was served, Lyzenga did not appear.

Following the hearing, the commission filed its findings of fact, conclusions of law, and recommendation. The commission deemed admitted the statements in the request for admissions based on its finding that Lyzenga had failed to respond to the request. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Palmer,* 563 N.W.2d 634, 635 (Iowa 1997). The commission further found that, in her letter to the board, Lyzenga had not acknowledged personal responsibility for her criminal convictions and had given no information that she had sought or received counseling for any personal problems that may have contributed to her criminal behavior.

Based on the criminal convictions, the commission concluded that Lyzenga had violated DR 1–102(A)(3), (4), (5), and (6). The commission further concluded that her felony forgery conviction was conclusive evidence of conduct involving dishonesty and therefore warranted revocation.

## II. Scope of Review.

█ Lyzenga has not appealed from the commission's recommendation. *See* Ct. R. 118.11. Nevertheless, we review the record de novo. Ct. R. 118.10. We give respectful consideration to the commission's recommendation; however, we must ultimately determine what discipline is appropriate under the facts of each case. *Id.; Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Leon,* 602 N.W.2d 336 (Iowa 1999). The board must prove the alleged ethical violations by a convincing preponderance of the evidence, a burden of proof that is greater than in a civil case but less than in a criminal case. *Leon,* 602 N.W.2d at 337.

█ Several important considerations guide our determination of the appropriate discipline. They include the nature of the alleged violations, the need for deterrence, the protection of the public, the mainte-

nance of the reputation of the bar, and Lyzenga's fitness to continue in the practice of law. *See Committee on Prof'l Ethics & Conduct v. Kaufman,* 515 N.W.2d 28, 30 (Iowa 1994).

### III. The Commission's Findings.

■ We agree with the commission that the board established all of the convictions. We also agree with the commission that Lyzenga's criminal convictions for theft, trespass, forgery, and deceptive practices reflect adversely on her fitness to practice law in violation of DR 1–102(A)(6). *See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Schatz,* 595 N.W.2d 794, 796 (Iowa 1999) (felonious theft—conversion of law firm funds); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Thompson,* 595 N.W.2d 132, 134 (Iowa 1999) (trespass); *Committee on Prof'l Ethics & Conduct v. Cody,* 412 N.W.2d 637, 640 (Iowa 1987) (aggravated misdemeanor theft by bad (dishonored) checks); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lesyshen,* 585 N.W.2d 281, 286 (Iowa 1998) (though no underlying criminal conviction, forgery of court documents held to be a violation of DR 1–102(A)(6)).

■ These convictions for theft, trespass, forgery, and deceptive practices also constituted conduct prejudicial to the administration of justice in violation of DR 1–102(A)(5). Any time a lawyer violates essential criminal laws, such conduct prejudices the administration of justice because "'there inexorably follows an intensified loss of lay persons' respect for the law.'" *Committee on Prof'l Ethics & Conduct v. Lapointe,* 415 N.W.2d 617, 619 (Iowa 1987) (quoting *Committee on Prof'l Ethics & Conduct v. Patterson,* 369 N.W.2d 798, 801 (Iowa 1985)).

■ Lyzenga's convictions for theft, forgery, and deceptive practices also demonstrate conduct involving dishonesty, fraud, deceit, and misrepresentation in violation of DR 1–102(A)(4). *See, e.g., Schatz,* 595 N.W.2d at 796 (felonious theft—conversion

of law firm funds); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sylvester,* 548 N.W.2d 144, 147 (Iowa 1996) (felonious theft—conversion of client and law firm funds); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Walters,* 603 N.W.2d 772, 777 (Iowa 1999) (though no underlying criminal conviction, writing bad check to client violated DR 1–102(A)(4)); *Lesyshen,* 585 N.W.2d at 286 (though no underlying criminal conviction, forgery of court documents held to violate DR 1–102(A)(4)). These convictions also constitute illegal conduct involving moral turpitude in violation of DR 1–102(A)(3). *See, e.g., Schatz,* 595 N.W.2d at 796 (felonious theft—conversion of law firm funds); *Cody,* 412 N.W.2d at 640 (aggravated misdemeanor theft by bad (dishonored) checks); *Committee on Prof'l Ethics & Conduct v. Rabe,* 284 N.W.2d 234, 236 (Iowa 1979) (serious misdemeanor theft—shoplifting); *see also Committee on Prof'l Ethics & Conduct v. West,* 387 N.W.2d 338, 341 (Iowa 1986) (though no underlying criminal conviction, attorney's conduct in forging warranty deed conveying property to himself and subsequently causing his secretary to notarize the purported signatures violated DR 1–102(A)(3)).

■ Because the convictions for prostitution are violations of our criminal code, they necessarily constitute conduct (1) prejudicial to the administration of justice in violation of DR 1–102(A)(5) and (2) reflecting adversely on Lyzenga's fitness to practice law in violation of DR 1–102(A)(6). *Cf. Richland County Bar Ass'n v. Brightbill,* 56 Ohio St.3d 95, 96, 564 N.E.2d 471, 472 (1990) (holding that conviction for soliciting a prostitute to engage in sexual activity for hire was prejudicial to the administration of justice); *In re Katz,* 109 N.J. 17, 19, 532 A.2d 729, 730 (1987) (holding that attorney's misdemeanor conviction for promotion of prostitution reflected adversely on his fitness to practice law).

■ On the question whether the prostitution convictions constitute illegal conduct involving moral turpitude, courts have ac-

knowledged the problematic moral underpinnings of prostitution and conduct centering on prostitution:

> Prostitution was not a common-law crime, unless the manner in which it was engaged constituted a public nuisance. It became a crime through statute and, despite suggestions that prostitution should be decriminalized, virtually all jurisdictions in this country continue to punish prostitution for utilitarian as well as religious and moral reasons.

*State v. Clark,* 406 N.W.2d 802, 804 (Iowa App.1987) (citations omitted).

Though not addressing conduct directly on point with the present case, several courts have held that conduct concerning prostitution does involve moral turpitude. *Cf. In re Wolff,* 490 A.2d 1118, 1120 (D.C. 1985), *aff'd on reh'g,* 511 A.2d 1047 (1986) (en banc) (holding that attorney who accepted payment from undercover police officers to perform acts of sexual self-gratification was guilty of conduct involving moral turpitude); *Brightbill,* 564 N.E.2d at 471–72 (holding that conviction for soliciting a prostitute to engage in sexual activity for hire constituted illegal conduct involving moral turpitude); *In re Howard,* 297 Or. 174, 177, 681 P.2d 775, 776 (1984) (accepting and approving attorney's admission that his misdemeanor conviction for paying a fee to engage in sexual conduct constituted "a conviction of a misdemeanor involving moral turpitude"); *Cogdill v. Committee of the Virginia State Bar,* 221 Va. 376, 379, 269 S.E.2d 391, 393 (1980) (holding that conviction for procuring a woman for the purpose of prostitution evidenced violation of DR 1–102(A)(3)); *In re Kosher,* 61 Wash.2d 206, 377 P.2d 988, 990 (1963) (holding that aiding and abetting in the "illicit practice of prostitution" involved moral turpitude).

While society has in recent years become more open and tolerant of certain activities, and while some have advocated the legalization of prostitution, we think society in general still views prostitution as immoral conduct. For this reason and because prostitution remains proscribed by our criminal law, we conclude Lyzenga's prostitution convictions constitute illegal conduct involving moral turpitude in violation of DR 1–102(A)(3).

## IV. Discipline.

■ Having found that the record establishes the board's charges in one manner or another, our remaining question is what discipline is appropriate.

At the outset, we note that Lyzenga's felony forgery conviction as well as her convictions of misdemeanors involving moral turpitude are alone sufficient reason to suspend or revoke her license. *See* Iowa Code § 602.10122(1) (1999) (providing that conviction of a felony is sufficient cause for revocation or suspension); Ct. R. 118.10 ("This court may revoke or suspend the license of an attorney admitted to practice in Iowa upon any of the following grounds: conviction of a felony, conviction of a misdemeanor involving moral turpitude. . . ."). As mentioned, the commission recommended revocation.

In her letter to the board, Lyzenga pointed out that her criminal convictions occurred after she stopped practicing law. She argued that she should not be disbarred because she "[has] been through enough," because she "[has] no mental health or substance abuse issues," and because she just "[wants] to know that this is something [she has] left, that has not been taken from [her], as everything else has been." She concluded that to deny her "the opportunity to practice again would be, in effect, taking away the one thing that [she has] clung to throughout this— [her] self-respect and the successes [she has] had."

The commission rejected her pleas, stating that Lyzenga's criminal conduct

> [c]annot be excused as the result of a bad situation in which Respondent found herself or as a reflection on any person other than Respondent. Respondent's failure to take personal responsibility for

these convictions is viewed by the commission as an indication that this long pattern of criminal behavior is unlikely to stop.

The commission is concerned about the impact on the public if an attorney with such a pattern of criminal convictions were to be allowed to continue practicing law. Attorneys are in a position of trust with the public in many ways; each client must be able to trust his or her own attorney implicitly, but also, in order for our legal system to work, clients must also be able to trust that opposing counsel will obey the law and will not act on improper motivations. The public at large must also be allowed to have confidence that attorneys who are duty bound to uphold the law will not go outside the law for their own personal gain. Respondent's criminal record indicates that she would not deserve such trust.

We agree. Given the shear volume of convictions for conduct involving dishonesty, deceit, fraudulent intent and general moral turpitude, we see no alternative but revocation. This is particularly so in light of Lyzenga's felony conviction for forgery, which strikes at the very heart of trustworthiness and honesty. *See Palmer,* 563 N.W.2d at 635 (revoking license of attorney convicted of crime involving theft and unauthorized use of credit card, even though misconduct was not associated with attorney's practice of law; especially critical to discipline imposed was that conviction at issue involved dishonesty).

And it makes no difference that these convictions may have occurred after Lyzenga ceased practicing law and were outside the context of a professional relationship between an attorney and client. *See Thompson,* 595 N.W.2d at 134 (citing *Committee on Prof'l Ethics & Conduct v. Millen,* 357 N.W.2d 313, 315 (Iowa 1984) ("It makes no difference that respondent was not acting as a lawyer at the time of his misconduct. Lawyers do not shed their professional responsibility in their personal lives.")). As we have noted, we have im-

posed discipline for criminal convictions not even remotely related to the practice of law. *See id.*

Lyzenga's letter to the board indicated she may have fallen on hard times. She insisted that the circumstances surrounding her convictions demonstrate that those convictions were not the result of intentional malice or ill will, but rather were the unfortunate by-product of the dire straits in which she found herself. While we may sympathize with her plight, her situation cannot excuse her misconduct. *See Committee on Prof'l Ethics & Conduct v. Barrer,* 495 N.W.2d 756, 759 (Iowa 1993) ("We have consistently refused to recognize a lawyer's personal or emotional problems as a defense to charges of misconduct."). As we said on one occasion:

> Nearly every lawyer involved in these cases could cite personal problems as the cause of the professional downfall. But life in general is a series of problems and it is the fundamental purpose of our profession to face and solve them. Our profession certainly cannot excuse misconduct on the basis of personal problems.

*Committee on Prof'l Ethics & Conduct v. Cook,* 409 N.W.2d 469, 470 (Iowa 1987).

Lyzenga wants to retain her license so that she might have a way to begin her life anew. While this is a laudable goal, we must keep in mind the purposes of attorney disciplinary proceedings and give them foremost consideration. These purposes include protecting the courts and the public from persons unfit to practice law, vindicating public confidence in the integrity of our system of justice, assuring the public that the courts will maintain the ethics of the profession, and deterring other lawyers from similar misconduct. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hansel,* 558 N.W.2d 186, 192 (Iowa 1997); *Cody,* 412 N.W.2d at 641. Lyzenga's repeated unlawful conduct over a three-year period casts a dark cloud over the integrity of the profession. While

permitting Lyzenga to retain her license might be good for her, allowing her to do so could no doubt be damaging to the public. With her track record, we have no assurance that she would not continue to break the law.

Also disturbing to us is Lyzenga's apparent disinterest in these proceedings. Although served with notice of the hearing, she failed to appear. This lack of interest not only mocks the disciplinary process but casts serious doubt on her true commitment and dedication to rectify her past conduct and adhere to the highest standards of professional conduct in the future.

We revoke Lyzenga's license to practice law in this state and assess costs to her pursuant to Court Rule 118.22.

**LICENSE REVOKED.**

McGIVERIN, S.J.,* participates in place of LARSON, J., who takes no part.