# IN THE SUPREME COURT OF IOWA

No. 13–0103

Filed May 10, 2013

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**BRIAN LOREN STOWE,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent committed ethical infractions and recommends his license be revoked. **LICENSE REVOKED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Brian Loren Stowe, Waverly, pro se.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against the respondent, Brian L. Stowe, alleging violations of the Iowa Rules of Professional Conduct and Iowa Court Rules. A division of the Grievance Commission of the Supreme Court of Iowa found Stowe's conduct violated numerous provisions of the rules and recommended we revoke his license to practice law. We are required to review the commission's report. *See* Iowa Ct. R. 35.11. On our de novo review, we find the Board established by a convincing preponderance of the evidence that Stowe committed violations of our rules when he converted a client's funds. Accordingly, we adopt the commission's recommendation and revoke Stowe's license.

## I. Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 601 (Iowa 2012). These proceedings are special, civil in nature, not criminal, and are akin to an investigation by the court into the conduct of its officers. *Comm. on Prof'l Ethics & Conduct v. Wright*, 178 N.W.2d 749, 750 (Iowa 1970).

The Board must prove the disciplinary violations by a convincing preponderance of the evidence. *McCarthy*, 814 N.W.2d at 601. "A convincing preponderance of the evidence is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt." *Id.* Accordingly, the burden on the Board is higher than the burden in civil cases, but less than in criminal cases. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Evans,* 537 N.W.2d 783, 784 (Iowa 1995).

We deem factual matters admitted by an attorney in an answer as established, regardless of the evidence in the record. *See Iowa Supreme*

*Ct. Comm'n on Unauthorized Practice of Law v. Sturgeon*, 635 N.W.2d 679, 686 n.1 (Iowa 2001) (rejecting the attorney's argument that the record did not support license revocation because the attorney admitted the misconduct in his answer); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Torgerson*, 585 N.W.2d 213, 213–14 (Iowa 1998) (finding rule violations when the attorney admitted collection of a clearly excessive fee). *But see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 804 (Iowa 2010) ("[W]e will not be bound by a stipulation of a violation or of a sanction in reaching our final decision in a disciplinary case.").

We give respectful consideration to the commission's recommendations, but they are not binding upon us. *McCarthy*, 814 N.W.2d at 601. We may impose a greater or lesser sanction than the commission recommends upon proof of misconduct. *Id.*; *see also* Iowa Ct. R. 35.11. Our determination of the appropriate sanction "is guided by the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and [the attorney's] fitness to continue in the practice of law." *Comm. on Prof'l Ethics & Conduct v. Kaufman*, 515 N.W.2d 28, 30 (Iowa 1994). The primary purpose of lawyer disciplinary proceedings is to protect the public, not punish the lawyer. *Comm. on Prof'l Ethics & Conduct v. Tullar*, 466 N.W.2d 912, 913 (Iowa 1991).

**II. Prior Disciplinary Proceedings and the Board's Present Complaint.**

This is not the first time the court has evaluated Stowe's fitness to practice law. On April 25, 2011, we granted the Board's request for a disability suspension of Stowe's license and the appointment of a trustee, due to his mental impairment and drug addiction. We temporarily

suspended his license once again on February 15, 2012, because Stowe failed to timely respond to an inquiry by the Board.

The current disciplinary action commenced on April 17, 2012, when the Board brought a complaint against Stowe, alleging five counts of misconduct. The Board alleged Stowe's plea to possession of methamphetamine constituted misconduct reflecting adversely on his honesty, trustworthiness, or fitness as a lawyer, in violation of Iowa Rule of Professional Conduct 32:8.4(b). Next, in counts two and three the Board alleged Stowe breached our rules by mishandling client trust funds, after he endorsed and cashed checks on two different clients' trust accounts without authority to do so. The Board specifically cited violations of Iowa Rules of Professional Conduct 32:1.3, 32:1.4, 32:1.15, and 32:8.4(b), (c), and (d), in addition to Iowa Court Rules 45.1, 45.2(1)–(2), and 45.7. In the fourth count, the Board alleged that Stowe tendered bad checks, violating Iowa Code sections 714.1(6) and 714.2(5), as well as Iowa Rule of Professional Conduct 32:8.4(b) and (c). Finally, the Board alleged that Stowe participated in the unauthorized practice of law after we suspended his license, violating Iowa Rules of Professional Conduct 32:5.5(a) and 32:8.4(c) and (d).

The Board later added three additional counts to the complaint. Count six alleged that Stowe violated our rules by being convicted of felony forgery for writing two checks on a client's private account without permission, offending Iowa Rule of Professional Conduct 32:8.4(b) and (c). Count seven accused Stowe of committing another act of unauthorized practice, in violation of Iowa Rules of Professional Conduct 32:5.5(a) and 32:8.4(c) and (d). The Board's final allegation accused Stowe of engaging in illegal drug use and fraudulent billing activity with

a client, in violation of Iowa Rules of Professional Conduct 32:1.5(a), 32:1.8(a), 32:5.4(a), and 32:8.4(b), (c), and (d).

In total, the Board alleges Stowe violated multiple rules of professional conduct and court rules. In his subsequent answers, Stowe admitted four of the counts are true. The commission held a hearing on October 31, where Stowe appeared pro se.

### III.  Findings of Fact.

On our de novo review, we make the following findings of fact. The life story of forty-one-year-old Brian Stowe mirrors that of Dr. Jekyll and Mr. Hyde. In the early phase of Stowe's legal career, he was a model citizen. During the day, he studied at Drake Law School. By night, he worked as a police officer and drug enforcement agent in various counties. In his spare time, Stowe coached youth basketball and little league, in addition to authoring and publishing novels.

In 2000, Stowe graduated from law school with honors. After his admission to the bar, he joined the Finley Law Firm in Des Moines. He made partner in only five years. To celebrate this accomplishment, in March 2007, Stowe took his family on a cruise, which included a stop in Belize.

Stowe alleges that while in Belize, he was abducted, beaten, sexually abused, and ransomed. However, other accounts indicate local authorities arrested him for possessing cocaine. The commission did not make a finding as to what really transpired in Belize. Neither do we. Whatever happened is not relevant to our decision.

Stowe later returned to the United States, where he received medical care. The Board launched an ethics investigation but ultimately did not file a complaint.

After the alleged Belize incident, Stowe's Hyde-like opposite emerged. Stowe claims he developed posttraumatic stress disorder, but did not seek counseling or treatment. He alleges he became severely depressed and began suffering from violent nightmares. Based on his training as a drug agent, he knew that taking methamphetamine would prevent him from falling asleep and consequently, experiencing nightmares. Stowe was acquainted with a drug dealer through his position as an attorney, purchased methamphetamine, and began to self-medicate. Stowe found it glamorous to talk about himself as a lawyer to individuals in the drug business, because he was not the typical drug user.

Stowe was unable to work because of these circumstances. His marriage eventually ended. He left his position as partner with the Finley Law Firm and moved to northern Iowa, where he found employment as an associate at the Thul Law Firm in Whittemore. Thul Law Firm ultimately terminated Stowe's employment on May 10, 2010.

Shortly thereafter, Stowe was convicted in Emmet County for possession of methamphetamine, in violation of Iowa Code section 124.401(5). Stowe submitted an Alford plea and received a deferred judgment contingent upon substance abuse treatment, which lasted eighteen months. Stowe was then convicted in Palo Alto County on two counts of felony forgery, in violation of Iowa Code section 715A.2. The felony convictions arose from Stowe forging the signature of his client, Ryan Yager, on two checks Stowe had stolen and used to transfer funds into his personal bank account.

Suffice it to say the record is replete with examples of Stowe's ethical failings, stemming from his unauthorized practice, excessive fees, improper fee splitting, neglect of client matters, trust account violations,

and misconduct arising from multiple criminal convictions.[1]  However, it is unnecessary for us to address these other infractions because there is sufficient evidence in the record to prove Stowe engaged in conversion of client funds.  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams*, 809 N.W.2d 543, 546 (Iowa 2012).

## IV.  Ethical Violation.

Stowe misappropriated client funds when he stole two checks from his client and housemate, Ryan Yager.  Stowe made out each check for $200, forged Yager's signature on both checks, and deposited the funds in his Iowa Trust & Savings Bank account in Emmetsburg.  Stowe did so without Yager's knowledge or permission.  Moreover, Yager did not owe Stowe legal fees based on their mutual agreement that Stowe could live with Yager in exchange for free legal services.

Based on his conduct, the State convicted Stowe on two counts of felony forgery, pursuant to Iowa Code section 715A.2.  At his plea hearing, Stowe admitted he defrauded Yager and the bank.  Moreover, Stowe stated it was his decision to forge Yager's name to the checks.

In connection with the conversion of client funds, the Board charged Stowe with violating rule 32:8.4(b).  The rule provides: "It is professional misconduct for a lawyer to: . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. of Prof'l Conduct 32:8.4(b).  A lawyer who commits a theft of funds engages in conduct involving moral turpitude, dishonesty, and conduct that adversely reflects on the lawyer's

---

[1]Stowe admits violations of our ethical rules due to his possession of methamphetamine conviction, mishandling of trust accounts, felony forgery convictions, and unauthorized practice during the previous suspension of his license to practice law.

fitness to practice law. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carroll*, 721 N.W.2d 788, 791 (Iowa 2006).

Thus, we find on our de novo review that Stowe violated rule 32:8.4(b).

## V. Sanction.

It is almost axiomatic that we revoke the licenses of attorneys who convert funds when the attorney did not have a colorable future claim to the funds. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelsen*, 807 N.W.2d 259, 267 (Iowa 2011) (recognizing "it is almost certain that we will revoke the license of any attorney involved in the conversion of funds"); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Anderson*, 687 N.W.2d 587, 590 (Iowa 2004) (revoking attorney's license for withdrawing funds from an escrow account for his personal use, even though the attorney later replaced the funds); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Williams*, 675 N.W.2d 530, 533 (Iowa 2004) (revoking attorney's license for billing employer for fictitious insurance claims and then transferring the funds to her personal account); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 145 (Iowa 2004) (revoking attorney's license for stealing client funds, failing to cooperate in the attorney disciplinary investigation, and lying to clients); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell*, 650 N.W.2d 648, 655 (Iowa 2002) (revoking attorney's license for misappropriating a not-for-profit organization's funds); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Leon*, 602 N.W.2d 336, 339 (Iowa 1999) (revoking the license of an attorney who misappropriated client funds, misrepresented case status to clients, neglected matters, and made dishonest statements to law partners and to a judge); *Comm. on Prof'l Ethics & Conduct v. Ottesen*, 525 N.W.2d 865, 866 (Iowa 1994) (revoking attorney's license for

withdrawing funds from the client's trust account and converting them to his own use); *Tullar*, 466 N.W.2d at 913 (quoting numerous cases stating revocation is appropriate when attorneys convert client funds).

We do not tolerate theft by Iowa lawyers. *Adams*, 809 N.W.2d at 545. A license to practice law is not a license to steal. Revocation is the appropriate sanction when attorneys convert funds, because it " 'is the only way to impress on [the attorney] and others the seriousness of these offenses.' " *Tullar*, 466 N.W.2d at 913 (quoting *Comm. on Prof'l Ethics & Conduct v. Piazza*, 405 N.W.2d 820, 824 (Iowa 1987)). Accordingly, the amount of money converted does not lessen the discipline. *Anderson*, 687 N.W.2d at 590.

As in these prior cases, there is no persuasive proof Stowe earned or had a colorable future claim to the funds converted. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann*, 712 N.W.2d 89, 97 (Iowa 2006) (finding the attorney had a colorable future claim to the funds he converted so suspension, not revocation, was appropriate). There is also no evidence Stowe took the monies for use other than pecuniary gain. *See Tullar*, 466 N.W.2d at 912–13 (revoking the license of an attorney convicted of first-degree theft for misappropriation of funds held in trust for his own personal use). Instead, the record demonstrates Stowe's compelling personal need for money to feed his severe methamphetamine addiction, to pay off his drug dealer who was blackmailing him, and to support himself because he was fired from his job and evicted from his home. Accordingly, we find Stowe's misconduct was motivated by a desire for financial gain. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 380 (Iowa 2005) (recognizing as a mitigating factor the lack of an attorney's intent to obtain a personal financial benefit from the misconduct).

Finally, an attorney's conviction of a felony is "sufficient cause[] for revocation or suspension" of a license to practice law. Iowa Code § 602.10122(1); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lyzenga*, 619 N.W.2d 327, 332 (Iowa 2000) (revoking the license of a lawyer who had a felony forgery conviction and recognizing "Lyzenga's felony forgery conviction . . . [is] alone sufficient reason to suspend or revoke her license"); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Palmer*, 563 N.W.2d 634, 634–35 (Iowa 1997) (revoking the license of an attorney who was convicted of a felony after stealing two credit cards and using them to obtain funds for his own use).

Forgery strikes at the very heart of an attorney's trustworthiness and honesty. *Lyzenga*, 619 N.W.2d at 332. We have previously recognized the crime of forgery, by its very nature, reflects adversely on an attorney's fitness to practice law. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Keele*, 795 N.W.2d 507, 513 (Iowa 2011). Thus, there is a sufficient link between the criminal activity and the attorney's ability to function as a lawyer to justify discipline for the felonious conduct. *Id.*

Although we have imposed lesser sanctions on certain attorneys who have committed acts of forgery, those cases did not involve any conversion of funds. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Newman*, 748 N.W.2d 786, 788–89 (Iowa 2008) (reprimanding an attorney who forged a judge's signature on a court document); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Rylaarsdam*, 636 N.W.2d 90, 93–94 (Iowa 2001) (suspending an attorney for six months for forging clients' signatures); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Clauss*, 530 N.W.2d 453, 455 (Iowa 1995) (suspending an attorney's license for three years for forging and notarizing a signature on a return of service).

Even when there is no felony forgery conviction, we revoke the license of an attorney who commits multiple acts of forgery. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 382 (Iowa 2007) (revoking attorney's license after the lawyer first forged a judge's signature and then later forged an estate executor's signature on court documents).

Particularly egregious is the fact Stowe's conversion activities occurred in the context of a professional relationship. Furthermore, Stowe has only half-heartedly accepted responsibility for his actions, shifting blame to his Mr. Hyde counterpart by stating his ethical failings do not reflect his true character and it "wasn't really me making those decisions." *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bieber*, 824 N.W.2d 514, 528 (Iowa 2012) (accepting responsibility is a mitigating factor).

Given the facts above, we find revocation of Stowe's license is necessary for deterrence, protection of the public, and maintenance of the reputation of the bar as a whole. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Vinyard*, 656 N.W.2d 127, 132 (Iowa 2003).

**VI. Disposition.**

Revocation of Stowe's license is the only discipline commensurate with his actions. We tax the costs of this proceeding to Stowe in accordance with Iowa Court Rule 35.27(1).

**LICENSE REVOKED.**