IOWA SUPREME COURT BOARD OF
PROFESSIONAL ETHICS AND
CONDUCT, Appellee,

v.

Robert Joseph MURPHY, Appellant.

No. 03–0001.

Supreme Court of Iowa.

Sept. 4, 2003.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for appellee.

Robert J. Murphy, Dubuque, pro se.

CARTER, Justice.

Attorney Robert J. Murphy (respondent) appeals from the findings and recommendation of the Grievance Commission following a hearing on a disciplinary complaint. The appellee is the Iowa Supreme Court Board of Professional Ethics and Conduct. After reviewing the record and considering the arguments presented, we suspend respondent's license to practice law for sixty days subject to the automatic reinstatement provisions set forth in Iowa Court Rule 35.12(2).

Respondent was admitted to practice law in Iowa in 1982 and has practiced in Independence and Dubuque. In December 1997 he agreed to represent Mary McDermott of Dubuque in an employment-discrimination action pending in the United States District Court. That action had been commenced in April of 1996, at which time McDermott was represented by another attorney. That attorney withdrew from the case with court permission on June 10, 1997.

When respondent appeared in the litigation on McDermott's behalf in January 1998, a motion for summary judgment filed by the defendant in the action, John Deere, was pending and not ruled on. Because of the withdrawal of her original attorney, McDermott had filed a pro se resistance to that motion and had obtained several extensions of time from the court to obtain the services of a new lawyer. After respondent appeared as counsel in the litigation, the court, acting *sua sponte*, requested a supplemental resistance to the motion for summary judgment. Notwithstanding that order, no additional response to the motion was filed on McDermott's behalf. On October 30, 1998, the court granted John Deere's motion for summary judgment and dismissed McDermott's complaint.

Respondent conferred with McDermott with respect to the federal court's ruling and agreed to represent her in pursuing an appeal. On November 23, 1998, respondent filed a notice of appeal to the United States Court of Appeals for the Eighth Circuit. While the appeal was pending and shortly before the appellant's brief was due, an appellate mediator engaged the parties in a settlement discussion. At the conclusion of that discussion, John Deere offered to pay McDermott the sum of $5000 in settlement of all claims.

Respondent later telephoned the attorney representing John Deere and left a voice-mail message. The substance of that message is disputed. Counsel for John Deere contended that the message contained an unequivocal acceptance of his client's $5000 settlement offer. Respondent testified before the Grievance Commission that immediately prior to the disputed voice-mail message he had been extremely ill and, in addition, had fallen in his bathroom and struck his head on the sink, leaving him "groggy" for some time. He stated that because of this occurrence he did not remember exactly what he had said on the voice mail. He testified that

I know I didn't say she settled. I know I said I thought she was going to because I really thought she was going to because for the first time she seemed to grasp this was not a very good case....

I will tell you right now that she finally did call me back and say I have thought about it and I won't do it.

It is disputed whether this voice-mail message was conveyed on February 12, 1999, or February 17, 1999. Respondent asserts that it was on the former date, and the attorney for John Deere asserts that it was on the latter date.

Counsel for John Deere wrote to respondent on February 17, 1999, reciting that the case had been settled and enclosing a settlement agreement to be executed by McDermott. At or about this same time, he notified the clerk of the federal court of appeals that he would not be filing an appellee's brief because the case had been settled. On March 16, 1999, a check from John Deere in the sum of $5000 was mailed to McDermott in care of respondent.

Respondent concedes that, prior to his service and filing of the appellant's brief in the federal court of appeals on February 16, 1999, McDermott had unequivocally rejected the $5000 settlement offer. Respondent did not respond to the February 17 letter from John Deere's attorney indicating that the case was settled. He did not inform McDermott that this correspondence had been received. He also did not inform her of the $5000 check, which he had received. When respondent received notification from the clerk of the federal court of appeals on March 29 that the court considered the case to have been settled, he immediately responded to that court and to John Deere's counsel stating that his client had not agreed to a settlement.

In order to resolve the dispute as to whether the case had been settled, the federal court of appeals directed the federal district court that entered the summary judgment ruling to hold an evidentiary hearing and determine whether a settlement had been reached. After hearing testimony from both respondent and John Deere's lawyer, the federal district court on November 16, 1999, ruled that respondent, acting for McDermott, had agreed to the settlement offer advanced by John Deere.

On receipt of the district court's ruling, the federal court of appeals issued an order to show cause why the appeal should not be dismissed as the result of the district court's findings. Respondent did not advise McDermott of either the ruling of the federal district court confirming the settlement or the show-cause order from the federal court of appeals. He filed no response to the show-cause order. On March 14, 2000, the court of appeals dismissed McDermott's appeal. Respondent also failed to inform McDermott of the latter ruling.

In January 2000 McDermott received a 1099 tax statement from John Deere indicating that it had paid to her the sum of $5000 in 1999. At this time, the unnegotiated settlement draft was still in respondent's file, and McDermott was unaware of its existence. McDermott prevailed upon her niece, an attorney, to make written inquiry of respondent concerning the significance of the 1099 tax statement. This inquiry, which was mailed on April 13, 2000, also asked for a status report on the pending appeal. McDermott's niece testified before the Grievance Commission that, on receipt of this request, respondent telephoned her and advised her that the 1099 tax statement was in response to a computer-generated check that had been issued by mistake and that McDermott's appeal was still going forward. This conversation, according to McDermott's niece, took place more than a month after the appeal had been dismissed. Respondent testified before the Grievance Commission that he had no recollection of any inquiry

from McDermott's niece concerning these matters and recalled no discussion with her with respect thereto.

■ Subsequent requests by McDermott for information on the status of her appeal were made to respondent during 2000 and were ignored. She eventually called the clerk of the federal court of appeals on March 12, 2001, and was advised that her appeal had been dismissed. This led to her filing of a complaint against respondent with disciplinary authorities. Following a hearing, the Grievance Commission found that respondent's actions were in violation of the following disciplinary rules: DR 1–102(A)(4) (misrepresentation); DR 7–101(A)(3) (prejudicing a client during the course of a professional relationship); and DR 9–102(B)(4) (failing to distribute funds to which client is entitled).

■ The Grievance Commission resolved the dispute as to the substance of the voice-mail message to John Deere's lawyer by declaring that the federal court's finding on that issue was preclusive. Based on the difference in burden of proof between a disciplinary proceeding and an ordinary civil action, we do not believe that the matter may be resolved on a theory of issue preclusion. *See* Iowa Ct. R. 35.7(3)(*b* ) (no issue preclusion unless burden of proof in prior proceeding was greater than a preponderance of the evidence). We are satisfied, however, on our de novo review that a convincing preponderance of the evidence supports the federal court's finding that a settlement had been completed. Respondent's recollection of the content of the voice-mail message was not clear. He gave a different version of the substance of this message to the federal court than he did to the Griev-ance Commission. The recollection of John Deere's attorney appears to be quite vivid and was bolstered by a contemporaneous written confirmation of the settlement that was not controverted by respondent when he received it.

With respect to respondent's testimony that he did not recall speaking with McDermott's niece concerning the 1099 tax form and the status of the appeal, we are convinced, as was the Grievance Commission, that the niece testified accurately as to the existence of this conversation and as to what was said. Considering all of the evidence presented, the violations of the Iowa Code of Professional Responsibility for Lawyers that were found by the commission are supported by a convincing preponderance of the evidence.

■ In fashioning an appropriate sanction for a violation of disciplinary rules, we consider the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar, and the respondent's fitness to continue in the practice. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett,* 653 N.W.2d 377, 381 (Iowa 2002); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Freeman,* 603 N.W.2d 600, 603 (Iowa 1999). We also give weight to both aggravating and mitigating circumstances. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sherman,* 637 N.W.2d 183, 187 (Iowa 2001).

In reviewing respondent's disciplinary violations, we deem it a mitigating factor that the dilemma in which he placed his client was based on his good-faith belief that accepting the settlement offer was in her best interest because she would not prevail on the pending appeal.[1] Respon-

1. The basis for the federal district court's grant of summary judgment was its conclusion that the significant allegations of sexual discrimination and sexual harassment contained in the complaint involved conduct that had occurred beyond the applicable statute of

dent felt so strongly that his client should accept the proposed settlement that he offered to forego his fee and refund the unexpended balance of the retainer in his trust account. Unfortunately, respondent's preference for settling the case resulted in an unwarranted communication to opposing counsel that was interpreted by that lawyer and later by the federal court as acceptance of the pending offer. Respondent acted diligently in his efforts to extricate his client (and also himself) from the dilemma that this created but did not succeed in that effort. Thereafter, he failed miserably with respect to the professional obligation owed to his client to timely and accurately communicate to her significant information pertaining to her case. His retention of the unnegotiated settlement draft was part of this withholding of information rather than an attempt to control the funds.

The Grievance Commission has recommended that respondent's license be suspended for ninety days. Respondent urges that a reprimand would be a sufficient sanction for the ethical violations that have occurred. We agree with the Grievance Commission that the seriousness of the respondent's breaches of professional responsibility warrants a suspension rather than a reprimand. A somewhat similar disciplinary proceeding was before this court in *Iowa Supreme Court Board of Professional Ethics & Conduct v. Adams,* 623 N.W.2d 815 (Iowa 2001). The lawyer in that case failed to file a bankruptcy petition for his clients and then repeatedly advised them that the bankruptcy was pro-

ceeding on schedule. Later, he falsely advised them that the bankruptcy court had lost their file. The lawyer also lost client documents that were required by a successor attorney in order to adequately present the bankruptcy petition. In that case, we imposed a three-month suspension similar to that recommended by the Grievance Commission in the present case.

Although the respondent's shortcomings in the present case were serious, they were somewhat less severe than those involved in the *Adams* case in which the lawyer had been previously disciplined. Respondent has not been subject to previous disciplinary action. The ethical violations that occurred with respect to this client stand in contrast to the manner in which he has normally conducted himself in the past. For those reasons, we are satisfied that the imposition of a sixty-day suspension in the present case, subject to the automatic reinstatement provisions of Iowa Court Rule 35.12(2), is an appropriate sanction.[2]

We suspend respondent's license to practice law for a period of sixty days from the date of the filing of this opinion. He is eligible for reinstatement on the day after the sixty-day period expires unless action is taken to deny reinstatement as provided in Iowa Court Rule 35.12(2). The suspension imposed applies to all facets of the practice of law as provided in Iowa Court Rule 35.12(3) and requires the notification of clients as provided in Iowa Court Rule 35.21. The costs of this disciplinary proceeding are assessed against respondent,

limitations. We give no consideration to the merits of McDermott's federal court appeal other than to conclude that respondent's conclusion that she should accept the settlement offer was in good faith.

**2.** A sixty-day suspension was also imposed in *Iowa Supreme Court Board of Professional*

*Ethics & Conduct v. Daggett,* 653 N.W.2d 377, 382 (Iowa 2002), in which the attorney neglected legal matters causing a certiorari petition challenging a jail sentence for contempt to be dismissed. He later misrepresented his failure to both his client and the district court.

and reinstatement shall not occur until these costs have been paid.

**LICENSE SUSPENDED.**