# IN THE SUPREME COURT OF IOWA

No. 11–1627

Filed March 2, 2012

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

Complainant,

vs.

**BRANDON ADAMS,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance Commission of the Supreme Court of Iowa recommends revocation of the respondent's license to practice law. **LICENSE REVOKED.**

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for complainant.

Brandon Adams, Cedar Rapids, pro se.

**APPEL, Justice.**

In this disciplinary matter, the Iowa Supreme Court Attorney Disciplinary Board (Board) filed a complaint alleging, among other things, that an Iowa attorney misappropriated funds belonging to two clients. Although the attorney was served with the complaint, he did not respond at any time to the complaint or participate in subsequent proceedings. Because the attorney did not contest the factual allegations in the complaint, the Grievance Commission of the Supreme Court of Iowa (commission) deemed them to be admitted. Based on these admissions, and upon the record developed at a subsequent hearing, the commission found numerous ethical violations, including those arising from the misappropriation of client funds, and recommended revocation of the attorney's license. We agree with the commission that misappropriation of client funds for personal use has been established and that revocation is the appropriate sanction.

## I. Factual and Procedural Background.

Attorney Brandon Adams has been before us previously. His disciplinary history was summarized in *Iowa Supreme Court Attorney Disciplinary Board v. Adams,* 749 N.W.2d 666, 668 (Iowa 2008) and need not be repeated here. We suspended his license in 2008 for serious disciplinary infractions. He has not applied for reinstatement.

On June 13, 2011, the Board filed a two-count complaint alleging that Adams violated multiple rules of professional conduct in connection with his representation of Kerston Moore and William Muhammad. Both the Moore and Muhammad matters involved representation of clients in connection with personal injuries.

With respect to the Moore matter, the Board alleged that Adams settled the case against the tortfeasor and obtained a check from State

Farm Insurance for $122,756.21. When the settlement funds were deposited in Adams' trust account, the Board asserted that Regions Bank debited $215.26 to cover a negative balance in the account from the previous month, an insufficient funds check, and an overdraft charge.

The Board alleged that Adams disbursed $47,500 from the settlement funds for his law office, apparently for attorneys' fees. He then paid $50,000 from the trust account to "Gaston and/or Linda Moore." Medical providers related to the file were paid $20,000. The Board did not challenge these withdrawals. The Board claimed, however, that additional checks were drawn on the account for unrelated matters, including three for filing fees and a $1000 check to a Raymond Barber.

After settling with the tortfeasor, Adams obtained a settlement with the underinsured motorist carrier, GEICO, of $25,000. According to the Board, Adams had authority to use these funds to satisfy claims with remaining medical providers. The Board alleged, however, that Adams used the entire amount for his own purposes.

The Board further asserted that Adams did not provide an accounting to Moore, or anyone on Moore's behalf, showing distributions of either the State Farm or the GEICO proceeds.

With respect to the Muhammad matter, the Board alleged that Adams settled the case for $19,000 and deposited this amount in his trust account. The Board alleged that Adams disbursed $7102.50 to himself after paying Muhammad $6000. The Board asserted that Adams agreed to use the balance to satisfy medical providers, with any remaining balance to be paid to Muhammad. The Board alleged, however, that Adams did not use the remaining funds to pay Muhammad's medical providers but instead withdrew the remaining

funds for his own personal use. When contacted by Muhammad regarding the status of getting his medical bills paid, the Board alleged that Adams did not respond.

In connection with the Moore and Muhammad matters, the Board alleged that Adams violated rule 32:1.3 (requiring a lawyer to act with reasonable diligence and promptness); rule 32:1.4(a)(3) (requiring a lawyer to keep the client reasonably informed); rule 32:1.4(a)(4) (requiring a lawyer to promptly comply with reasonable requests for information); rule 32:1.5 (prohibiting a lawyer from making an agreement for, charging, or collecting an unreasonable fee or an unreasonable amount of expenses); rule 32:1.15(d) (requiring the lawyer to promptly deliver to the client any property the client is entitled to receive); rule 32:1.15(f) (requiring client accounts to comply with chapter 45 of the Iowa Court Rules); rule 32:8.4(c) (stating it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation").

Although Adams was served with the complaint, he did not file an answer and did not participate in the subsequent proceedings. The Board filed a motion with the commission, urging that the matters alleged in the complaint be deemed admitted and that the hearing be limited to determining the appropriate sanction in light of the admitted facts. The commission sustained the motion. At a subsequent hearing, the Board offered exhibits into evidence.

After examining the allegations of the complaint and the exhibits admitted into evidence, the commission found numerous ethical violations. Most importantly, the commission found that in connection with both the Moore and the Muhammad matters, Adams violated rule 32:8.4(c) by engaging in acts involving dishonesty, fraud, deceit, or

misrepresentation. The commission found that in both matters he misappropriated client funds for his own personal use. The commission also found that Adams violated numerous other rules, but we find it unnecessary to discuss them in light of the serious nature of the dishonesty involved in this case.

## II. Standard of Review.

The standard of review in disciplinary cases is well established. We review the findings of the commission de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 677 (Iowa 2010). The Board bears the burden to prove misconduct by a "convincing preponderance of the evidence." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 304 (Iowa 2009). This burden is less demanding than proof beyond a reasonable doubt, but requires a greater showing than the preponderance of the evidence. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004). Once misconduct is proven, we may impose a "lesser or greater sanction than the discipline recommended by the grievance commission." *Earley*, 774 N.W.2d at 304 (citation and internal quotation marks omitted).

## III. Discussion.

We begin our discussion by noting that when an attorney does not answer a complaint filed by the Board, the allegations in the complaint are deemed admitted. *See* Iowa Ct. R. 36.7. In addition, however, the Board offered evidence that confirms the basic allegations of its complaint.

Based on our examination of the complaint, the allegations of which are deemed admitted, and the underlying file, we conclude that the Board has shown Adams misappropriated client funds in the Moore and Muhammad matters in violation of rule 32:8.4(c). The Board has

shown that Adams on two occasions took client funds, of which Adams had no colorable future claim, from his trust account and used the money for his own purposes. *See Earley*, 774 N.W.2d at 309 ("Unless the attorney had a colorable future claim to the funds or did not take the funds for [the lawyer's] own use, revocation will be ordered." (citation and internal quotation marks omitted)).

We do not tolerate this kind of misconduct from Iowa lawyers. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Reilly*, 708 N.W.2d 82, 84–85 (Iowa 2006) (revoking license for misappropriation of settlement funds); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carroll*, 721 N.W.2d 788, 792 (Iowa 2006) (revoking license where attorney "stole someone else's money"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. D'Angelo*, 710 N.W.2d 226, 235–37 (Iowa 2006); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell*, 650 N.W.2d 648, 652 (Iowa 2002) ("There is no place in our profession for lawyers who convert funds entrusted to them." (citation and internal quotation marks omitted)); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Leon*, 602 N.W.2d 336, 339 (Iowa 1999) (revoking license for misappropriation of client funds); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Carr*, 588 N.W.2d 127, 130 (Iowa 1999) (revoking license for a single act of misappropriation).

In light of the misappropriations of client funds for personal use, we do not address the numerous other disciplinary violations against Adams. To do so is simply unnecessary. Based on the proven misappropriations of client funds for his own personal use, we revoke the license of Brandon Adams to practice law in this state.

## IV. Conclusion.

The license of Brandon Adams to practice law in this state is revoked.

**LICENSE REVOKED.**