# IN THE SUPREME COURT OF IOWA

No. 13–1271

Filed January 3, 2014

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**DAVID L. STRAND,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent committed ethical violations and recommends his license be revoked. **LICENSE REVOKED.**

Charles L. Harrington and Nicholas Trè Critelli III, Des Moines, for complainant.

David L. Strand, Decorah, pro se.

**ZAGER, Justice**.

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint against the respondent, David L. Strand, alleging he violated the Iowa Rules of Professional Conduct and Iowa Court Rules. Although Strand was served with the complaint, he did not respond or take part in any proceedings. A division of the Grievance Commission of the Supreme Court of Iowa found Strand violated numerous provisions of the rules of professional conduct and recommended we revoke his license. We are required to review the report of the commission. Iowa Ct. R. 35.11(1). Upon our de novo review, we find the Board established by a convincing preponderance of the evidence Strand violated our rules of professional conduct when he converted client funds. Therefore, we concur with the commission's recommendation and revoke Strand's license to practice law.[1]

**I. Background Facts and Proceedings.**

Strand is an Iowa attorney admitted to practice in 1984. Until his temporary suspension effective September 20, 2012, Strand practiced in Decorah, Iowa. On March 20, 2013, the Board filed a complaint alleging Strand violated twelve rules of professional conduct and two Iowa Court Rules in his representation of the Estate of Shiloh Deal and his representation of Darlyne Hackman.

Strand's representation of the Estate of Shiloh Deal began in December 2007 when he agreed to represent the estate and Deal's minor daughter for wrongful death claims arising from an auto accident that caused Deal's death. In January 2008, Strand opened an estate for Deal

---

[1]Strand is the subject of an "Order of Temporary Suspension" issued by this Court on September 20, 2012, based on his failure to cooperate with an audit of his trust account. The suspension has not been lifted.

and was designated attorney for the estate. Deal's father and aunt were appointed coadministrators of the estate, and letters of appointment were to issue after the posting by the coadministrators of a $2000 bond. However, on March 3, 2009, the estate was administratively closed because the bond had not been posted and letters of appointment had not been issued.

On or about July 20, 2009, in exchange for the settlement of the claims of the estate and Deal's minor daughter, Strand received two checks for $50,000 each from the tortfeasor's liability insurer. Strand reached this settlement without receiving court approval. Also, while the coadministrators signed releases to consummate the settlement, they had no authority to do so as letters of appointment had never been issued and the estate had been closed. Strand did not inform the coadministrators he had already received the settlement funds from the liability insurer. Strand kept the $100,000 paid by the liability insurer rather than disbursing it through the estate or for the benefit of Deal's minor daughter.

On or about October 28, 2010, Strand received an additional $100,000 from Deal's underinsured carrier. Again Strand did not inform the coadministrators that he had received the funds, nor did he receive court approval for the settlement. Strand also kept this $100,000 payment for himself rather than disbursing it through the estate or for the benefit of Deal's minor daughter.

On March 14, 2012, Strand forwarded a check in the amount of $71,000 to the coadministrators of the estate written on his client trust account. The check bounced. When the check was presented a second time, the check bounced a second time. Strand afterward wired $71,500 to the account of coadministrator Randall Deal. Of the $200,000

received by Strand from the insurance companies, Strand kept $128,500 for himself. No accountings were ever provided to the court or to the coadministrators.

Randall Deal terminated Strand's representation and hired another attorney. Randall Deal and the new attorney requested numerous times that Strand transfer his files to the new attorney. Strand never transferred the files.

After a complaint was filed with the Board regarding his handling of this matter, Strand responded with a letter dated August 29, 2012. In the letter, Strand made both a misrepresentation and an omission. Strand represented that he had received an insurance settlement in the "Winter of 2011." In fact, Strand had received the second $100,000 payment in October 2010. Strand omitted that he had received the first $100,000 payment in July 2009.

In April 2012, Strand represented Darlyne Hackman in the sale of her real estate. Strand drafted the documents to complete the sale for the price of $15,000. On April 11, 2012, the closing date, the buyer gave Strand a check in the amount of $15,000, which Strand deposited into his client trust account. Hackman eventually hired a new attorney. Despite repeated demands by Hackman and her new attorney, Strand did not pay these funds to Hackman. Finally, after Hackman filed a disciplinary complaint against Strand, to which he did not respond, Strand paid the funds to Hackman's new attorney in February 2013.

The Board alleged in connection with the above two matters that Strand violated Iowa Rules of Professional Conduct 32:1.2(a) (allocating authority between lawyer and client), 32:1.3 (requiring a lawyer to act diligently and promptly), 32:1.4(a) (mandating a lawyer to communicate with his or her client), 32:1.5(a) (prohibiting collection of an

unreasonable fee), 32:1.5(c) (requiring a contingent fee agreement to be in writing), 32:1.15(c) (permitting a lawyer to withdraw fees from a client trust account only as fees are earned), 32:1.15(d) (requiring prompt delivery to client of funds that the client is entitled to receive), 32:1.15(f) (governing client trust accounts), 32:1.16(d) (requiring upon termination of representation a lawyer to surrender the client's papers and property), 32:8.1(b) (prohibiting a lawyer from knowingly failing to respond to a lawful demand for information from a disciplinary authority), 32:8.4(b) (prohibiting a lawyer from "commit[ting] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects"), 32:8.4(c) (prohibiting a lawyer from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation"), and Iowa Court Rules 45.7(4) (requiring notice contemporaneous with withdrawal of any advance fee) and 45.7(3) (permitting a lawyer to withdraw fees from a client trust account only as fees are earned).

The Board's complaint was served on Strand on March 21, 2013, but Strand filed no answer or response. On April 16, the Board filed a motion urging the commission to deem the allegations in the Board's complaint admitted and to limit the disciplinary hearing solely to deciding the appropriate sanction for Strand's conduct. The commission granted the motion. At the hearing, the Board offered numerous exhibits into evidence. Strand did not attend the hearing, nor did anyone appear on his behalf.

The commission found that Strand committed all the rule violations alleged by the Board. Among those violations, the commission found Strand violated rule 32:1.15(d) by converting client funds. The commission found this violation to be the most serious, and it limited the focus of its sanction recommendation to this rule violation. Upon

consideration of the gravity of converting client funds, the commission recommended Strand's license be revoked.

## II. Standard of Review.

Our review of attorney discipline proceedings is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Khowassah*, 837 N.W.2d 649, 652 (Iowa 2013). The Board bears the burden of proving by a convincing preponderance of the evidence the attorney's misconduct. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 9 (Iowa 2012). The convincing-preponderance-of-the-evidence burden requires a greater showing than the burden imposed in a typical civil case, but it is less demanding than proof beyond a reasonable doubt. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 831 N.W.2d 194, 197 (Iowa 2013). We may impose a lesser or a greater sanction than the sanction recommended by the commission if we find the Board has met its burden and proven misconduct. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cannon*, 821 N.W.2d 873, 877 (Iowa 2012). We note also that the allegations in the Board's complaint are deemed admitted when an attorney does not answer a complaint filed by the Board. Iowa Ct. R. 36.7; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams*, 809 N.W.2d 543, 545 (Iowa 2012).

## III. Discussion.

Based upon our de novo review of the record, the allegations contained in the Board's complaint, which are deemed admitted, and the exhibits introduced during the hearing, there is convincing evidence in the record to show that Strand converted client funds. After nearly one year, after a disciplinary complaint was filed against him, and after his license was suspended, Strand finally paid to Hackman the $15,000 due her from the sale of her real estate. In the Deal case, it took more than

two years and a disciplinary complaint before Strand finally paid $71,500 to the estate of $200,000 in settlement funds he had received. The record before us does not disclose what happened to the other $128,500 in settlement funds Strand received, but he did not disburse them through the estate or for the benefit of Deal's minor daughter. The Board has shown that Strand took client funds to which he had no colorable future claim. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowe*, 830 N.W.2d 737, 742–43 (Iowa 2013) (revoking the license of an attorney who was convicted of a felony and converted client funds to which he had no colorable future claim); *Adams*, 809 N.W.2d at 546 (revoking the license of an attorney who took clients funds to which he had no colorable future claim); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 309 (Iowa 2009) ("Unless the attorney 'had a colorable future claim to the funds or did not take the funds for [the lawyer's] own use,' revocation will be ordered." (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carroll*, 721 N.W.2d 788, 792 (Iowa 2006))).

"It is almost axiomatic that we will revoke the license of an attorney who converts a client's funds to his or her own use." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelsen*, 807 N.W.2d 259, 266 (Iowa 2011). We revoke the licenses of attorneys who convert client funds "because it 'is the only way to impress on [the attorney] and others the seriousness of these offenses.'" *Stowe*, 830 N.W.2d at 742 (quoting *Comm. on Prof'l Ethics & Conduct v. Tullar*, 466 N.W.2d 912, 913 (Iowa 1991)). This case is like many other conversion cases, and it requires the same sanction. *See, e.g., id.* at 741, 743 (revoking license of attorney who stole and forged two checks from his client and housemate); *Adams*, 809 N.W.2d at 545–46 (revoking license of attorney who converted funds of two clients); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Reilly*, 708

N.W.2d 82, 83, 85 (Iowa 2006) (revoking license of attorney who converted client's settlement funds); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell*, 650 N.W.2d 648, 650, 655 (Iowa 2002) (revoking license of attorney for converting funds of nonprofit legal organization for which he was the treasurer); *Comm. on Prof'l Ethics & Conduct v. Ottesen*, 525 N.W.2d 865, 866 (Iowa 1994) ("There is no place in our profession for lawyers who convert funds entrusted to them.").

It is unnecessary to address the other ethical violations Strand committed because there is sufficient evidence to prove Strand converted client funds. *See Stowe*, 830 N.W.2d at 741; *Adams*, 809 N.W.2d at 546. Based on the proven conversion of client funds, we revoke the license of David L. Strand to practice law in this state.

## IV. Conclusion.

The license of David L. Strand to practice law in this state is revoked. We tax the costs of this proceeding to Strand in accordance with Iowa Court Rule 35.27(1).

**LICENSE REVOKED.**