# IN THE SUPREME COURT OF IOWA

No. 14–1781

Filed April 3, 2015

Amended June 9, 2015

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**JOHN E. CEPICAN,**

Respondent.

_____

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommended revocation of attorney's license. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace (until withdrawal) then Amanda K. Robinson, Des Moines, for complainant.

John E. Cepican, Bettendorf, pro se.

**CADY, Chief Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged John E. Cepican with violating the Iowa Rules of Professional Conduct pertaining to neglect of client matters, failure to follow trust account procedures upon receipt of retainers, and failure to respond to the Board. The Grievance Commission of the Supreme Court of Iowa found Cepican converted client funds without a colorable future claim to them. It recommended Cepican's license to practice law be revoked. On our review, we find Cepican violated the rules of professional conduct, but he was not provided with adequate advance notice that he was charged with converting client funds. We suspend his license to practice law for a period not less than six months.

## I. Background Facts and Proceedings.

John Cepican is an Iowa lawyer. He was admitted to practice law in 1974 and developed a practice primarily limited to the area of intellectual property. He maintained an office in Bettendorf, but was not actively engaged in his practice by the time this disciplinary action proceeded to hearing. Cepican is sixty-six years old.

The Board brought a three-count complaint against Cepican alleging various violations of the Iowa Rules of Professional Conduct involving his actions with three clients. Each count in the complaint involved a different client, and the evidence at the hearing showed Cepican caused substantial heartache and harm to each of them. In the first count, Cepican represented a client to secure a patent for an invention involving a toy. Over time, he neglected to perform certain legal services and failed to adequately communicate with the client. After the client brought a complaint against him, Cepican failed to reply to the Board on numerous occasions.

The two other counts in the complaint also involved neglect of client matters. One of the counts involved a complex scientific invention by the client. The neglect by Cepican was serious enough for the United States Patent and Trademark Office (USPTO) to issue notices of abandonment of the patent application of the client. The conduct by Cepican in this and other cases eventually led to a default judgment excluding him from practicing before the USPTO.

The final two complaints also alleged Cepican failed to follow proper trust account procedures upon receiving client retainers. In the second count, Cepican received a client retainer for legal work he agreed to perform. He then neglected the work and failed to refund the retainer after the client became dissatisfied with his inaction. In the third complaint, Cepican received a $5000 retainer from the client to perform legal work, but again failed to complete the work or return the retainer. He also failed to place the retainer in his trust account and failed to provide the client with an accounting. The client subsequently brought a lawsuit against Cepican to recover the retainer and obtained a default judgment in the amount of $5000.

After Cepican failed to respond to the allegations of the complaint, the commission deemed the allegations in the complaint to be admitted. Additionally, Cepican was prohibited from introducing witnesses or evidence on the charges and was not permitted to object to any evidence offered by the Board. These actions were a result of sanctions imposed by the commission based on Cepican's failure to respond to discovery requests. The case then proceeded to a hearing limited to the imposition of sanctions. In a prehearing brief, the Board explained that the trust fund allegations involved the claim that Cepican "did not follow proper trust account procedures with respect to said retainers."

The evidence at the hearing revealed Cepican had experienced numerous problems in his personal and professional life over a period of several years prior to the complaints and the hearing. Cepican testified he had no desire to return to the active practice of law, but requested the commission make a recommendation that he be suspended from the practice of law for a period of time. At the close of the hearing, the Board told the commission that Cepican's trust fund conduct warranted a revocation of his license based on his admission to the allegations that he converted retainer funds for his personal use before the fees were fully earned.

The commission concluded Cepican's trust fund violation constituted stealing because no evidence was presented during the hearing that he had a colorable future claim to the $5000 retainer provided by the client in the third count. The commission found this conclusion was also supported by evidence that the client obtained a judgment against Cepican for the full amount of the retainer. Consequently, it recommended that his license to practice law be revoked.

## II. Scope of Review.

"We review attorney disciplinary matters de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lemanski*, 841 N.W.2d 131, 133 (Iowa 2013).

## III. Ethical Violations and Sanctions.

An attorney who misappropriates a client retainer fee either violates the rules pertaining to the safekeeping of client funds and client trust accounts, Iowa Rules of Professional Conduct 32:1.15 and Iowa Court Rules chapter 45, or commits theft in violation of the rules of professional conduct pertaining to misconduct involving dishonesty, fraud, deceit, or misrepresentation, Iowa Rules of Professional Conduct

32:8.4(*c*).   The difference in the conduct is critical because of the difference in the sanctions imposed.   Theft of client funds is grounds for revocation, while the failure to follow the rules governing retainer fees normally results in a less severe sanction.   *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 830 N.W.2d 355, 358–59 (Iowa 2013) (recognizing a consistent pattern of revocation for client fund conversion and suspension for trust fund violations involving the early taking of fees).   Often, the critical distinction between the two violations rests on whether or not the attorney had a colorable future claim to the funds. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carter*, 847 N.W.2d 228, 232 (Iowa 2014).   An attorney in a disciplinary proceeding has the burden to produce evidence of a colorable future claim, but the burden of proving theft remains with the Board.   *Id.* at 232–33.

In this case, no evidence was presented by Cepican concerning a colorable future claim to the client retainer in the amount of $5000.   He was precluded from introducing any evidence as a sanction for failing to answer the complaint and discovery requests.   Yet, there was evidence a client obtained a judgment against Cepican in the amount of $5000 in a lawsuit brought to recover the retainer.   There was also evidence from the clients indicating Cepican did little work in their cases.

On our de novo review, we conclude it is unnecessary for us to determine if Cepican committed theft of retainer funds to justify the recommended sanction of revocation.   We conclude the complaint in the proceedings before the commission did not provide adequate notice to Cepican of the charge of theft, and this lack of notice denied him a reasonable opportunity to defend against the claim and the sanction of revocation.

An attorney in a disciplinary action is entitled to notice of the specific charges of misconduct alleged to have been committed. Iowa Ct. R. 35.5. The charges must be known to the attorney before the hearing begins. *In re Ruffalo*, 390 U.S. 544, 551, 88 S. Ct. 1222, 1226, 20 L. Ed. 2d 117, 122 (1968) (holding the quasi-criminal nature of disciplinary cases requires fair notice of the charges); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 536 n.2 (Iowa 2013) (citing *Ruffalo* and noting that "the [B]oard must disclose the charges against an attorney before the proceedings commence"). The notice requirement is a basic component of procedural due process. *Nelson*, 838 N.W.2d at 536 n.2.

An attorney is given sufficient notice of misconduct alleging theft or misappropriation of a client retainer when the complaint is not only predicated on a violation of the rules pertaining to the safekeeping of property and trust accounts, but also includes allegations that the rule prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation was violated. *See* Iowa Rs. Prof'l Conduct 32:1.15, 32:8.4(*c*); Iowa Ct. Rs. 45.1, 45.2, 45.7. The complaint should specifically allege misappropriation or conversion of a client retainer for personal use without a colorable future claim. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kelsen*, 855 N.W.2d 175, 183 n.3 (Iowa 2014). We recognize notice of an allegation of theft of a retainer may be satisfied with less precise language in the complaint, but only when supplemented by a record that shows the attorney actually had an opportunity to submit evidence of a colorable future claim at the disciplinary hearing and understood the issue was being litigated. *See id.* (finding attorney understood the charge and presented evidence to establish a colorable claim).

In this case, the allegations in the complaint did not provide adequate notice to Cepican that he faced a claim of misconduct in the nature of theft that would support revocation of his license. The complaint only alleged he obtained retainers and did not deposit them into his trust account, even though the retainers had not been earned. Cepican admitted, as required by the commission's sanction, all the allegations in the complaint, but the possibility that he faced a revocation of his license to practice law was not raised until the conclusion of the hearing. Thus, his conduct in failing to respond to the complaint cannot be deemed a waiver of his right to contest the allegations of theft. Under the circumstances, Cepican did not have a fair opportunity to know the issue of theft was in play and to produce evidence to show he had a future colorable claim to the retainer. This defense is established by evidence the attorney had a good-faith intent to perform the work even when the attorney failed to perform enough of the work to exhaust the retainer. *See Carter*, 847 N.W.2d at 233–34 (permitting a colorable future claim to "shield an attorney from revocation when the premature fee claim exceeds the actual fee earned if the funds converted were retainer funds"). Furthermore, a default judgment entered against an attorney in the civil action over a retainer would not render the colorable-future-claim defense inapplicable in a subsequent disciplinary action. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 177–78 (Iowa 2013) (explaining the requirements for issue preclusion based on prior proceedings).[1] The

---

[1]Two default judgments were imposed against Cepican. First, the USPTO entered a default judgment excluding Cepican from practice before the USPTO. This judgment was admitted for preclusive effect regarding Cepican's neglect and abandonment of his patent cases under Iowa Court Rule 35.7. The second default judgment was from an Iowa court for the amount of the retainer in Count III. The

difference in burden of proof between an ordinary civil action and a disciplinary action generally means civil actions do not have preclusive effect in disciplinary hearings. *See* Iowa Ct. R. 35.7(3)(*b*) (requiring the burden of proof in the original proceeding be greater than mere preponderance of the evidence); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Murphy*, 669 N.W.2d 254, 257 (Iowa 2003) (finding the difference in burden of proof prevented issue preclusion). Additionally, a default judgment is not a final judgment on the merits for the purposes of issue preclusion. *See Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 572 (Iowa 2006) ("Iowa law is clear that issue preclusion requires that the issue was 'actually litigated' in the prior proceeding. . . . 'In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.' " (Citations omitted.) (quoting Restatement (Second) of Judgments § 27 cmt. *e*, at 257 (1982))). Thus, Cepican could have asserted the defense of colorable future claim at the hearing.

Accordingly, we do not consider whether Cepican violated the rules of professional conduct pertaining to the misappropriation of a retainer without a colorable future claim. The other violations alleged by the Board in the complaint were established at the hearing and support the imposition of discipline. Based on all the evidence presented at the hearing, we suspend Cepican from the practice of law for a period of time not less than six months. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bartley*, 860 N.W.2d 331, 338, (Iowa 2015) (suspending license for six

---

judgment is not included in this record. Further, no notice was provided to Cepican that the Board intended to use it for preclusive effect. *See* Iowa Ct. R. 35.7(3)(*c*). However, the commission effectively granted the judgment preclusive effect to conclude Cepican performed no work on the case.

months for neglect, trust account violations, and misrepresentation); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hauser*, 782 N.W.2d 147, 153–54 (Iowa 2010) (suspending license for six months for severe neglect, failure to communicate, and trust account violations); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Walker*, 712 N.W.2d 683, 685–86 (Iowa 2006) (suspending license for six months for neglect, misrepresentation, and failure to communicate resulting in harm to the clients).

The sanction imposed does not minimize the seriousness of the conduct by the attorney or the harm caused to the clients. It considers all the objectives of imposing sanctions on attorneys who violate the rules of professional responsibility. But, it also recognizes, as we must, that the legal process must be fair and, in this case, include fair advance notice when a revocation of license to practice law is on the line.

## IV. Conclusion.

We suspend the license of John E. Cepican to practice law in Iowa for a period not less than six months. Cepican shall comply with all rules pertaining to the suspension. *See* Iowa Ct. R. 35.13. Costs of this proceeding are assessed against Cepican. *See id.* r. 35.27(1).

**LICENSE SUSPENDED.**

All justices concur except Wiggins, J., who takes no part.