# IN THE SUPREME COURT OF IOWA

No. 16–1551

Filed December 16, 2016

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**BRIAN MICHAEL GREEN,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent committed ethical misconduct and recommends the revocation of the attorney's license. **LICENSE REVOKED.**

Tara M. van Brederode and Amanda K. Robinson, Des Moines, for complainant.

Brian Michael Green, Des Moines, pro se.

**ZAGER, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) filed a complaint charging an attorney with violations of two of our ethical rules. The attorney did not answer the complaint, and the facts of the complaint were deemed admitted pursuant to rule 36.7. *See* Iowa Ct. R. 36.7. After a hearing, which the attorney failed to attend, the Grievance Commission of the Supreme Court of Iowa (commission) found the attorney violated our ethical rules and recommended we revoke the attorney's license. Upon our de novo review, we conclude the Board proved by a convincing preponderance of the evidence a violation of rule 32:8.4(c) and resulting misappropriation. Accordingly, we revoke the attorney's license to practice law.

## I. Background Facts and Proceedings.

Attorney Brian Green was licensed to practice law in Iowa at the time of the actions in this case. Because Green failed to file an answer to the Board's complaint, the facts as alleged in the complaint are admitted. *See* Iowa Ct. R. 36.7; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kallsen*, 814 N.W.2d 233, 236 (Iowa 2012). The facts alleged in the complaint are as follows.

Green rented office space from Troy Strawhecker (Strawhecker) and James Myers (Myers) in the name of his company, Third Inning Solutions (3IS, L.L.C.). Strawhecker and Myers are commercial real estate developers in central Iowa and Nebraska. After a few months, Strawhecker and Myers approached Green for help raising equity for a business project. While the majority of the services Green provided to Strawhecker and Myers involved raising equity, he did provide legal services to them on an occasional basis. Generally, Strawhecker and

Myers utilized the services of other attorneys for their regular, ongoing business needs.

Green provided legal consultation and also drafted incorporation documents for at least one business for Strawhecker and Myers. In early 2012, Strawhecker and Myers approached Green about a potential business venture with a prosthetics company, GMS of Rochester, Inc. (GMS). They agreed to create a management company, Summit Quest Holdings, L.L.C. (Holdings), with Green acting as the Chief Executive Officer (CEO). The business arrangement was to be between Strawhecker and his limited liability company, Strawhecker Development1, L.L.C. (collectively Strawhecker); Myers and his limited liability company, Archangel Development, L.L.C. (collectively Myers); and Green and a limited liability company under his control, 3IS, L.L.C. (collectively Green).

In February 2012, Green represented to Strawhecker and Myers that he had created Holdings. Each of them was to hold equal ownership interest in Holdings and share equally in the business income and profits of Holdings. The intent was that Holdings would enter into an agreement with GMS to provide management services for a period of time, with the ultimate goal of finding a buyer for this business.

While Green represented to Strawhecker and Myers that he had created Holdings to accomplish this goal, Green never incorporated Holdings. Instead, Green created Summit Quest Capital, L.L.C. (Capital), a Delaware limited liability company with its principal place of business in Polk County, Iowa. Green and his wife were the sole members. Unbeknownst to Strawhecker and Myers, Green entered into an exclusive management agreement with GMS on June 1, 2012, utilizing his personal company, Capital, rather than the agreed upon Holdings.

Also in June 2012, Green asked Strawhecker to personally guarantee a residential lease in Rochester, Minnesota. Green told Strawhecker he needed the accommodations in order to perform services under Holdings' agreement with GMS. Green apparently could not secure the lease without a guarantor based on his poor credit. Green never made any of the monthly lease payments. Strawhecker had to terminate the lease and was personally responsible for approximately $2700 in rent due to Green defaulting on the lease.

Between June 1, 2012, and February 11, 2013, Green represented to Strawhecker and Myers that he was performing CEO duties on behalf of Holdings. At various times throughout this time period, both Strawhecker and Myers requested documentation about Holdings, GMS, and the agreement between the parties. Green failed to produce any information or documentation. Pursuant to the agreement with GMS, Green received monthly payments of $27,500 as the agent for Capital. The agreement between Strawhecker, Myers and Green was that Holdings would receive this $27,500 per month and Green would be compensated $12,000 per month as CEO. The remaining amounts would be equally divided between Strawhecker and Myers. Despite their agreement, Green disbursed little or nothing to Strawhecker and Myers, even after they requested disbursements. Ostensibly from Holdings, both received from Green reimbursement for several business expenditures—$5000 and $7500, respectively. Later, Strawhecker and Myers requested a distribution of income from Green. When Green was unwilling or unable to disburse any money, they requested accountings from Green to determine where the funds were going. No accountings were ever provided. Strawhecker and Myers also requested information regarding the services provided to GMS and status reports of Green's

activities under the contract. Green did not provide the information or status reports.

On or about February 11, 2013, GMS informed Strawhecker and Myers it was terminating the management agreement. GMS alleged that Green violated multiple terms of the agreement, including but not limited to making false representations to GMS, violating policies under the agreement, and "massive" wage and benefit misappropriations. After they received this information from GMS, Strawhecker and Myers learned for the first time that Green never created Holdings. Instead, all the funds paid by GMS were received by Green on behalf of Capital and misappropriated by Green. None of the proceeds remained in Capital. Strawhecker and Myers learned that the monthly checks of $27,500 were written directly to Green, rather than to the company that they thought Green had incorporated. Despite repeated requests for more information, Green never communicated with Strawhecker or Myers and refused to provide any information regarding the creation of the business entities or the agreement. Strawhecker and Myers filed their complaint with the Board on February 11, 2014.

Green wrote the Board a letter in which he generally denied Strawhecker and Myers's allegations but concluded as follows

> However, I no longer live in Iowa. I haven't practiced law in over four years and my license has been on inactive status for about three years. I have no desire to practice law now or in the future. As such, to save the State of Iowa, the Disciplinary Board and all of the parties' time and resources (of which I don't have any), I am willing to voluntarily give up my law license in perpetuity to resolve this matter.

The Board filed its complaint on March 23, 2016, alleging that Green violated rules 32:8.4(c) (dishonesty, fraud, deceit, or misrepresentation) and 32:1.8(a) (business transactions with clients).

Green was served with the complaint on April 1. Green failed to timely file an answer within twenty days from completed service and was commanded by the commission to file an answer by May 3. *See* Iowa Ct. R. 36.7. Green again failed to file an answer. On May 4, the Board moved for a ruling pursuant to Iowa Court Rule 36.7 determining that the allegations contained in the complaint were considered admitted due to Green's failure to file an answer. *See id.* On May 16, the commission granted the order and considered the allegations in the complaint admitted.

On June 9, the Board served eight interrogatories and a request to produce documents on Green. The answers to the discovery requests were due by July 11, but Green did not timely answer the interrogatories. The Board filed a motion to compel on July 26. On August 9, the commission ordered Green to serve his responses and produce documents by August 11. No response was ever received.

The commission held a hearing on August 15. Green was not present at the hearing, nor was he represented by counsel. He did not request a continuance or an alternate way to participate in the hearing. The hearing was briefly postponed to allow Green extra time in case he was late, but Green never appeared.

After the hearing, the commission filed its proposed findings of fact, conclusions of law, and recommendation of sanction on August 29, and filed an amended version on September 16. The commission found that Green violated rules 32:8.4(c) (dishonesty, fraud, deceit, or misrepresentation) and 32:1.8(a) (business transactions with clients). The Board raised the doctrine of issue preclusion because Green was

found civilly liable for the same conduct.[1] However, because the final order in the case was entered as a result of a default and not as a final judgment on the merits, the commission did not apply issue preclusion to the district court judgment. Based on the commission's finding of ethical violations and the misappropriation of funds, the commission recommended that Green's license to practice law be revoked.

## II. Standard of Review.

We review attorney disciplinary cases de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland*, 885 N.W.2d 198, 205 (Iowa 2016). "The Board must prove attorney misconduct by a convincing preponderance of the evidence, a burden greater than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Att'y Doe No. 792*, 878 N.W.2d 189, 193 (Iowa 2016) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cross*, 861 N.W.2d 211, 217 (Iowa 2015)). While we give the findings and recommendations of the commission respectful consideration, we are not bound by them. *Weiland*, 885 N.W.2d at 205. We may impose a sanction that is greater or lesser than recommended by the commission. *Id.* Because Green failed to file an answer to the Board's complaint, the facts as alleged in the complaint are admitted. *See* Iowa Ct. R. 36.7; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Strand*, 841 N.W.2d 600, 603 (Iowa 2014).

## III. Analysis.

As a preliminary matter, issue preclusion does not apply in this case. Generally, the difference in the burden of proof required in an

---

[1]*Strawhecker v. Green*, Case No. EQCE073916 (Polk Cty. Dist. Ct. Aug. 6, 2013). Strawhecker and Myers received a judgment totaling $687,727.33 but had not collected any of the judgment as of the date of the hearing before the commission.

ordinary civil case and that required in an attorney disciplinary action results in civil actions not having preclusive effect in disciplinary cases. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cepican*, 861 N.W.2d 841, 845 (Iowa 2015). Further, we require an issue to be actually litigated before we apply issue preclusion. *Id.* "In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." *Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 572 (Iowa 2006) (quoting Restatement (Second) of Judgments § 27 cmt. *e,* at 257 (Am. Law Inst. 1982)). Because the district court issued a default judgment in Green's civil case, the underlying issue was never actually litigated and issue preclusion does not apply.

**A. Rule 32:8.4(c) Violation (Dishonesty, Fraud, Deceit, or Misrepresentation).** Under rule 32:8.4(c), it is a violation of our ethical rules for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). An attorney–client relationship does not need to exist between the attorney and the person on the receiving end of the attorney's dishonesty, fraud, deceit, or misrepresentation in order for us to find a violation of rule 32:8.4(c). *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Haskovec*, 869 N.W.2d 554, 560 (Iowa 2015).

To find a violation of rule 32:8.4(c), we must find that the attorney acted with "some level of scienter" rather than mere negligence. *Id.* This requires that the attorney acted knowingly, intentionally, or with the aim to mislead. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 698–99 (Iowa 2014). An attorney's "casual, reckless disregard for the truth" also establishes a violation of the rule. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 656 (Iowa

2013) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Isaacson*, 750 N.W.2d 104, 109 (Iowa 2008)).

An attorney violates this rule when he or she commits theft by appropriation of funds. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 844 N.W.2d 111, 116 (Iowa 2014). An attorney commits theft by appropriation when he or she

> [m]isappropriates property which the person has in trust, or property of another which the person has in the person's possession or control, whether such possession or control is lawful or unlawful, by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property, or conceals found property, or appropriates such property to the person's own use, when the owner of such property is known to the person.

*Id.* (quoting Iowa Code § 714.1 (2011)). However, we do not require a criminal conviction in order to find a violation of our ethical rules. *Id.*; *see also Comm. on Prof'l Ethics & Conduct v. Hall*, 463 N.W.2d 30, 35 (Iowa 1990) ("It is also immaterial that respondent was not charged or convicted of a crime. A criminal conviction is not a condition precedent to a discipline proceeding when the facts themselves warrant discipline.").

Even when an attorney is not criminally charged for theft, the lack of prosecution does not alter the fact that theft is a violation. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Khowassah*, 837 N.W.2d 649, 654 (Iowa 2013). This is, in part, because we require that allegations of theft in the context of attorney discipline only be proved by a convincing preponderance of the evidence. *Id.* "[A] criminal law defense is not a defense in a disciplinary proceeding since the purpose of a disciplinary hearing is not primarily intended to punish the lawyer but rather to protect the public." *Id.* at 655 (quoting *Comm. on Prof'l Ethics & Conduct v. Williams*, 473 N.W.2d 203, 206 (Iowa 1991)).

The range of our sanctions for a violation of rule 8.4(c) spans from a public reprimand all the way to license revocation. *See Cepican*, 861 N.W.2d at 844. We ask whether the attorney had a colorable future claim to the funds or if the attorney engaged in theft of client funds. *Id.* (laying out the test for determining whether suspension or revocation is the appropriate sanction for a rule 32:8.4(c) violation). While the Board carries the burden of demonstrating misappropriation of funds has occurred, the attorney has the burden of producing evidence that he or she had a colorable future claim to those funds. *Id.*

Because Green failed to file an answer to the Board's complaint, the facts as set forth by the Board in the complaint were admitted. *Strand*, 841 N.W.2d at 603. Pertinently, the complaint states that Green "had a history of providing legal assistance/advice" to Strawhecker and Myers and that "Green entered into a business transaction with his clients without fully disclosing to the clients the true terms of the arrangement in writing." Additionally, the complaint alleges that Green misrepresented that the legal entity created by him that would be entering into the relationship with GMS (i.e., Holdings) was one in which Green, Strawhecker, and Myers would have an equal interest. Instead, the entity created by Green that contracted with GMS (i.e., Capital) was solely owned by Green.

Thus, Green made representations to Strawhecker and Myers that were intended to mislead them into thinking an entirely different business entity was created. Green misled Strawhecker and Myers into believing they were creating a business entity with Green and they would share equally in the business income and profits. In reality, Green created a separate business entity that only named him and his wife as members with rights to share in the business income and profits. For

months, Green represented to Strawhecker and Myers that he was performing CEO duties on behalf of Holdings. Although they repeatedly requested documents and accountings, Green refused to produce documents.

Further, Green misappropriated all of the revenue under the fraudulent entity (Capital) for himself, disbursing little or nothing to Strawhecker and Myers. The revenue made from the management agreement with GMS was not received by Holdings, but was all misappropriated to the entity controlled by Green, Capital. After Green dishonestly and fraudulently received the monthly payments under the agreement, Green misappropriated all of the funds for his own use. None of the money remained in Capital by the time Strawhecker and Myers learned of the misappropriation. We agree with the commission. We hold that the Board proved a violation of rule 32:8.4(c) by a convincing preponderance of the evidence and that there was a misappropriation of funds.

**B. Sanction.** In nearly every case, we revoke the license of an attorney who converts client funds without a colorable future claim. *See Strand*, 841 N.W.2d at 604; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowe*, 830 N.W.2d 737, 742 (Iowa 2013) (quoting numerous cases wherein we held revocation was the appropriate sanction when attorneys converted client funds); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 807 N.W.2d 259, 266 (Iowa 2011) ("It is almost axiomatic that we will revoke the license of an attorney who converts a client's funds to his or her own use."). We have consistently found revocation the appropriate sanction in embezzlement cases, even when the embezzled funds were returned. *See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Anderson*, 687 N.W.2d 587, 590 (Iowa 2004). This is because

> [w]e do not tolerate theft by Iowa lawyers. A license to practice law is not a license to steal. Revocation is the appropriate sanction when attorneys convert funds, because it "is the only way to impress on [the attorney] and others the seriousness of these offenses."

*Stowe*, 830 N.W.2d at 742 (citation omitted) (quoting *Comm. on Prof'l Ethics & Conduct v. Tullar*, 466 N.W.2d 912, 913 (Iowa 1991)).

This case involves the misappropriation and theft of funds in connection with an attorney–client relationship, and like our other such cases, it requires the same sanction. *See, e.g.*, *Strand*, 841 N.W.2d at 604. We revoke the license of Brian Green to practice law in this state. Because we find that Green violated rule 32:8.4(c) and determine that revocation is the appropriate sanction, it is not necessary to address the rule 32:1.8(a) violation. *Id.*

## IV. Conclusion.

The license of Brian Green to practice law in the state of Iowa is hereby revoked.

**LICENSE REVOKED.**